## David J. LaRose, Sr. v. Department of Employment Security

[431 A.2d 1240]

No. 103-80

Present: Barney, C.J., Larrow, Billings and Hill, JJ., and Shangraw, C.J. (Ret.), Specially Assigned

Opinion Filed April 30, 1981

*Zander B. Rubin, Elliot M. Burg,* and *Ronald Westgate* and *F. J. Constantine,* Law Clerks (On the Briefs), South Royalton Legal Clinic, South Royalton, for Plaintiff.

*Matthew R. Gould* and *Nancy E. Smith,* Law Clerk (On the Brief), Montpelier, for Defendant.

**Barney, C.J.** This case involves a decision of the Employ-

ment Security Board disqualifying the plaintiff for unemployment benefits. The issue was whether he had left his employment voluntarily, without good cause attributable to his employer. 21 V.S.A. § 1344(a)(2)(A). Both the claims examiner and the appeals referee had previously found against the plaintiff.

The plaintiff was a butter maker at Cabot Farmers Co-op Creamery Company, Inc. He started work in March, 1973, and was hired to work a 45-hour week. After the first few weeks he averaged 72 hours per week, except in the summer when he averaged 50 hours per week. For the last year and a half, he worked as much as 80–95 hours per week.

In June, 1979, the plaintiff took his vacation, even though vacations were ordinarily taken after July 4 since June is part of the busiest time of the year. While he was on vacation, his employer received a very large order requiring a 40% production increase. As a result, the employer hired an additional butter maker and instituted two shifts.

The plaintiff returned from vacation upset at the prospect of a reduction in working hours. He gave his employer one and a half weeks notice. During this time his hours worked averaged about 56–58 hours per week, which represented approximately a 40% reduction in gross wages.

The findings of the Board state that the plaintiff did not, at the time of giving notice, assign the wage reduction as a reason, but stated he was going into the stove wood business. The employer was also found not to have discussed the change in hours with the plaintiff.

The Board went on to conclude that the evidence before it did not demonstrate a legally enforceable contractual arrangement between the plaintiff and the employer in which the plaintiff was to be allowed to work any particular number of overtime hours above his basic 45 hours per week employment. On that basis the Board determined that the employer's unilateral reduction in the number of overtime hours did not give good cause to the plaintiff to terminate his employment voluntarily without being disqualified for unemployment compensation benefits.

The decision was not an easy one, and it divided the Board. Unfortunately, human problems are often both complex and untidy. This case does not come to us with its competing in-

terests crisply stated or neatly compartmented. Rather, its resolution turns more on a weighing of the equities, making it perhaps of small precedential value. Nevertheless, it is the function of this Court to decide the rights of the parties.

To begin with, we find the question of the Board's evaluation of the evidence, hearsay or otherwise, of the asserted failure of the plaintiff to confront his employer with his complaint about his loss of overtime as not critical in this case. The plaintiff was confronted with a new employee with whom his work was to be shared and had been informed of a new reduced hourly schedule. This 40% reduction in wages was either good grounds for quitting, or it wasn't.

We view the length of the overtime and the magnitude of the decrease in salary as crucial in this case. The overtime had become a regular part of the plaintiff's employment over the six years that he had worked. He had grown to rely upon the overtime income to support his family.

Obviously, any change in overtime employment or length of working time is not, per se, going to justify quitting without jeopardy to unemployment compensation. But, in this case, in the face of six years of employment with substantial overtime, to say that an employer can unilaterally reduce the hours back to 45, as contended, or reduce the wages earned by 40%, is just too egregious a change to avoid a finding of "just cause." Even though perhaps not precise enough in terms of doctrines of implied-in-fact contract law to yield exact enforceability as to its terms, having in mind the purposes of the Unemployment Compensation Act it seems clear that six years of employment has built in sufficient modification of the basic employment agreement to support the payment of unemployment compensation benefits as much as it did in *Surowick* v. *Department of Employment Security,* 133 Vt. 578, 349 A.2d 905 (1975).

*The order of the Employment Security Board is reversed, and the cause is remanded for the computation of benefits.*

**Hill, J.,** dissenting. The appellant challenges a Vermont Employment Security Board decision finding him disqualified for unemployment benefits under 21 V.S.A. § 1344(a)(2)(A). In dealing with this claim, the majority rewrites Anglo-American jurisprudence, informing us that "equity precedes the

law." With this, quite clearly, I can not agree. The law dictates the proper decision in this case. Further, this Court should not second guess and supersede the Board's informed judgment without a factual basis clearly dictating such action. The majority here even admits that this is a close question. We are not a trial court, and should not impose our biases on the tribunals duly authorized to make such decisions.

The claimant was employed for six years as chief butter maker by Cabot Farmers Co-op Creamery Company. His employment contract called for a 45 hour work week at a rate of $4.40 per hour for 40 hours and $6.60 per hour of overtime. For several years he averaged 72 hours per week, except in the summer months when he worked about 50 hours per week. The appellant worked as much as 80–95 hours per week during the past 1½ years, although the amount of overtime fluctuated.

The employer, faced with a new order necessitating a 40% increase in butter production during the appellant's vacation in June 1979, hired an additional butter maker and initiated two shifts. There is no evidence that the appellant ever feared he would be forced to work less than the 45 hours guaranteed in his contract. In fact, the two butter makers currently employed average at least 60 hours per week.

Faced with an apparent reduction in work hours, the appellant gave 1½ weeks notice upon returning from vacation that he was quitting his job. During the notice period, he worked approximately 56–58 hours per week. The majority opinion flatly concludes that this constitutes a 40% reduction in gross wages. I am unable to understand such mathematics in view of the record's clear indication that claimant's hours vastly fluctuated over the term of his employment. The Board also found that the appellant did not notify his employer that he was leaving as a result of the anticipated reduction in work hours. Although that finding is challenged, it is irrelevant to this decision.

The appellant claims that the unilateral reduction in the number of overtime hours provided the requisite good cause attributable to his employer to avoid disqualification for unemployment compensation benefits, pursuant to 21 V.S.A. § 1344(a)(2)(A). He claims that the custom which developed during the six years of employment created an im-

plied contract assuring overtime work or, in the alternative, that the practice of working overtime created a legitimate expectation that the schedule would not be reduced. I disagree.

"Good cause attributable to an employer" is an amorphous phrase requiring analysis as it pertains to each individual situation. See *Nurmi* v. *Vermont Employment Security Board*, 124 Vt. 42, 47, 197 A.2d 483, 486 (1963). Burden is on the employee to satisfy the standard. *Lanctot* v. *Department of Employment Security*, 134 Vt. 281, 283, 356 A.2d 531, 533 (1976). Certainly the appellant would sustain the burden if he could prove that an implied employment contract embodying a promise of overtime work had modified the express hiring contract. Courts, however, are reluctant to find an implied-in-fact contract modifying express terms of a contract. See *Cass-Warner Corp.* v. *Brickman*, 126 Vt. 329, 229 A.2d 309 (1967). Only when the assent of both parties is clear, *Underhill* v. *Rutland R.R.*, 90 Vt. 462, 475, 98 A. 1017, 1021 (1916), and all requirements of a contract have been met, *Raymond* v. *Sheldon's Estate*, 92 Vt. 396, 397, 104 A. 106, 107 (1918), will a court find terms of an implied contract controlling where an express contract directly covers the subject matter. "The requirements of mutuality of intent and the lack of ambiguity in offer and acceptance are the same for an implied-in-fact contract as for an express contract; only the nature of the evidence differs." *Russell Corp.* v. *United States*, 537 F.2d 474, 482 (Ct. Cl. 1976).

The appellant claims, in effect, that he was promised overtime work. "A promise is an expression of intention that the promisor will conduct himself in a specified way or bring about a specified result in the future, communicated in such manner to a promisee that he may justly expect performance and may reasonably rely thereon." *Cain* v. *Allen Electric & Equipment Co.*, 346 Mich. 568, 78 N.W.2d 296, 301 (1956) (quoting 1 Corbin on Contracts § 13). While the promise need not be expressed in words, *Cushman* v. *Outwater*, 121 Vt. 426, 159 A.2d 89 (1960), and it can be unilateral so that only one of the parties makes a promise, see *Entis* v. *Atlantic Wire & Cable Corp.*, 335 F.2d 759 (2d Cir. 1964), the appellant has offered no evidence of the existence of duties owed in regard to overtime. We are without proof that the employer could force the employee to work overtime. The appellant has of-

fered no proof that he had a right to perform whatever overtime work was available. No agreement apparently existed beyond a promise of 45 hours work per week at a certain hourly wage. The mere possibility that the appellant would have faced reduced overtime hours therefore did not create a contract breach and consequently provide a good cause attributable to the employer sufficient to qualify for unemployment benefits pursuant to 21 V.S.A. § 1344 (a) (2) (A).

The appellant also claims that he had a legitimate expectation of overtime work and that the new work schedule frustrated that expectation. It is true that an employee may expect certain employment conditions which are not necessarily subject to a legal claim, and that denial of such expectation satisfies the "good cause" requirement. *Surowick* v. *Department of Employment Security*, 133 Vt. 578, 349 A.2d 905 (1975) (aircraft mechanic who quit job because the heat, as an energy measure, was turned off in February in the hangar in which he worked, was not disqualified for unemployment compensation benefits). The Court read into the *Surowick* employment contract the right to have reasonable work conditions. For purposes of determining disqualification for unemployment compensation, a court looks to reasonableness, or what a reasonable person would expect in the same circumstances. *Palucci* v. *Department of Employment Security*, 135 Vt. 156, 159, 376 A.2d 14, 16 (1977). In the present case, the appellant is not being denied a reasonable condition of employment. A reasonable person could only expect the work schedule for which he bargained.

The situation also differs from cases where an employee was reduced from a full-time to a part-time worker, *Gemmell* v. *Department of Employment Security*, 135 Vt. 636, 377 A.2d 1326 (1977), or where an employer violated a contractual guarantee that an employee would receive overtime work, *Tombigbee Lightweight Aggregate Corp.* v. *Roberts*, 351 So. 2d 1388 (Ala. Civ. App. 1977). This case also differs from those cited by the appellant wherein an employer replaces an hourly wage rate with a lower pay scale. The employee here was guaranteed the terms of his written contract, and he is owed no more.

The appellant's final claim is irrelevant to the issue at hand. He claims the Board's decision relies on a finding of fact that

he made no effort to discuss with his employer the reason for quitting. The logical result of appellant's claim is that, no matter how absurd a grievance, merely voicing dissatisfaction to an employer lays the groundwork for "good cause" for quitting. Even if the Board's finding on this point is without foundation, it is harmless error.