STATE OF MAINE                                     SUPERIOR COURT
KENNEBEC, ss                                       AP-10-25
                                                   MMM-KEN - 4/10/2011


JOHN C. FOSS

        Petitioner

v.                                                 ORDER ON RULE 80C
                                                   APPEAL

MAINE UNEMPLOYMENT
INSURANCE COMMISSION

        Respondent


## Procedural Background

Before the Court is an appeal brought pursuant to Rule 80C of the Maine Rules

of Civil Procedure and 5 MRSA §11007. Petitioner John Foss is represented by Attorney

John P. Ritzo and Respondent Maine Unemployment Insurance Commission (hereinafter

Commission) is represented by Assistant Attorney General Elizabeth J. Wyman.

Petitioner is the captain and owner of the schooner "American Eagle" which takes

guests on extended sailing trips along the Maine, New Hampshire and Massachusetts

coasts. Captain Foss here appeals a decision of the Commission (Decision No. 10-C-

02878) which qualified Robin A. Pietila (hereinafter Claimant) for unemployment

benefits. She had originally qualified for those benefits pursuant to a deputy's decision of

December 3, 2009. That decision was appealed by Capt. Foss to the Division of

Administrative Hearings which conducted a hearing on February 9, 2010. On that date

1

the Hearing Officer issued a decision finding that she was disqualified from receiving benefits because she had refused an offer of suitable work within the meaning of 26 MRSA §1193(3). Claimant appealed that decision to the Commission which conducted a hearing on May 13, 2010. At that hearing Claimant was represented by Attorney Andrew T. Mason, and the employer was represented by Attorney Ritzo. On June 10, 2010 a majority of the Commission issued a decision setting aside the decision of the Administrative Hearing Office, finding that Claimant did not refuse an offer of suitable work. Capt. Foss filed a Rule 80 (C) appeal to this Court. The Court heard from the parties in oral argument on December 29, 2010.

**Factual Background**

The Claimant was hired in March of 2009 to serve as a cook on the "American Eagle" Schooner for the season which was to run from the middle of May to the middle of October 2009. (Administrative Record, hereinafter "R" at 115). This would have been Claimant's first time working on a ship or as a cook. ((R. at 38). For an approximate two week period before the schooner set sail, she helped to set up the galley with the assistance of a "mess mate" who had worked the year before. (R. at 28). She also worked for a brief period scraping varnish from the deck while waiting for the mess mate to recover from an illness. It soon became obvious that she could not perform the scraping job because due to a condition with her hands which tend to swell up after certain kinds of hard work. She let Captain Foss know about her hand troubles, and he agreed that she did not need to continue the scraping job. He also recognized early in the season that she could not do certain jobs that required heavy lifting, including hauling groceries or lines.

2

(R. at 118) Over the course of the season she cooked three meals a day for passengers and fellow crew members. The number of people eating meals varied from four to twenty- eight people. Her day would begin at 4:30 and run until approximately 7:30 pm. She would take breaks in between cooking meals on the wood cooking stove. (R. at 45).

Claimant testified that she believed that her duties would include cooking until the end of the season. She believed that would be in the middle of October. (R. at 65). However, she stated that it was not clear to her as of May what was going to be needed for her job to be complete. (R. at 47). She testified that just prior to Labor Day, before the ship sailed to Gloucester, she discussed with Captain Foss what was expected at the end of the season. She testified that she told him that she had a function to attend the day the ship was returning from its last sail, and that Captain Foss agreed to her leaving that day so long as the galley was clean. She also testified that he told her that there would be guests on the last trip who traditionally help clean up, and that she would not be needed because she could not carry boxes and other heavy items because of her hands. (R. at 51)

According to Capt. Foss, Claimant's expression of her desire to leave early "was a little indirect." (R. at 119). He added that by the end of May, "it was pretty clear to everybody in the crew that what we had to do in the spring we had to do again in the fall." (R. at 119).

According to Captain Foss and witnesses called by him, she had expressed her dissatisfaction about the job at various times during the summer. (R. at 161, 192) Both parties agree that there was a meeting at which the possibility of her leaving early was discussed. According to Eric Klem, the first mate, Captain Foss encouraged her to stay until the end of the season and she agreed to do so. Captain Foss describes a conversation

3

that took place in the presence of the "fall mate" Carob Arnold sometime after the middle of September. He says the conversation went "really well." She asked to be excused from the fall layup work. He described it as "hard heavy work," which he implied she could not do. (R. at 192, 193). He assumed based on that conversation that when they came back from the last trip that "she would do some work, but she would not be coming in after that." (R. at 193). He also stated that when they talked in September about her departure, "it was really trying to target, when she could get out of there, could the day we come in be her last day, and I laid out what things need to happen in the galley lay-up. I'm reasonably certain I did not make it a condition of her departure, but I did describe all the things that have to happen in the galley to complete the season – (indiscernible) put your items that would normally take some time." (R. at 120).

Capt. Foss testified that when they arrived at the dock, while they "were tearing all the gear off," Claimant asked if she should come the next day. He told her no, that they "had the job covered." (R. at 188). He testified that he was surprised that she asked if she should come in the next day because the request did not fit in with other conversations in which she had said she could not do the work and that she had other things she had to do, "which I understood." (R. at 188).

Claimant testified at the telephonic hearing on Feb. 9, 2010 that when the ship came in from its last trip that she, along with others, started taking things off the boat, and Capt. Foss told her that she was no longer needed. (R. at 214). She asked him if he needed her to come back the next day to help wash the galley and he said no, "you probably can't even carry pillows was his statement." (R. at 214). She reiterated this

testimony before the Commission. (R. at 52-54). She also stated that she had "everything packed up, boxes labeled, ready to go." (R. at 54).

Before the Commission, the Claimant testified that she never asked to finish the season early, she simply asked for help doing her duties as a cook. She said she did take a week off when her hands were giving her trouble, and that when she came back she was asked to not work the mess mate so hard, and that she agreed to make the lunch dessert and make coffee, jobs the mess mate was unable to do. She also conceded that she, along with other crew members, would occasionally get sea sick. (R. at 88, 89). She testified that Capt. Foss and she agreed that after the mess mate left that she would have enough help, and that she would finish up the season. She testified that "he hugged her and said, good, I'm glad you're going to finish the season...."

The last sail of the season ended October 11, 2009. The schooner arrived in Rockland in the morning, and Claimant served brunch. She testified that she had worked the previous week on her day off, as well as the two days prior to arrival in Rockland, organizing and cleaning the galley. (R. at 51, 216).

When pressed by the Hearing Officer at the Commission as to whether she refused an offer of employment, she insisted that after being told she was no longer needed, that neither Capt. Foss nor anyone affiliated with him contacted her at all, much less offered any job that she refused. (R. at 56). She stated

Capt. Foss testified before the Commission that at the end of the season different crew members stayed on for different lengths of time. He indicated that one crew member stayed four days, one stayed two weeks, and the other stayed until the end of

December. (R. at 121). He was asked by his attorney whether he quantified the amount of work available for the Claimant that might last after the last sail, as follows:

> Probably not. I just described it in general terms. It certainly does come up in the fall that once the sailing's done and the galley's shut down, there's not quite as much incentive to stay around. And the crew will say, oh, I can stay a week. I say, great, that's fine. You know, I'll -- I say, can you stay longer? They do. But it's the whole process that needs to continue. You know, I don't consider the season over when the passengers leave. I consider the season over when the work's done. (R. at 121).

He went on to say that he was "flattered by her asking if she could come in the next day – if I wanted her to come in the next day, but it was a complete contradiction of everything she had told me for the previous several months, and I was almost speechless. I felt that this was a good time to say no, thank you." (R. at 123).

Claimant testified that during the conversation with Capt. Foss just before she left the ship on October 11, 2009, when she asked him if he needed her the next day, he told her that she did not have to come back because he had other people to do the work she had been doing. (R. at 52, 126, 132). He shook her hand, told her he would send a W-2 in January and would let her know around that time if he would need her next season. (R. at 52)

Capt. Foss takes the position that Claimant's departure from work on October 11, 2009 constituted a refusal of suitable work because she in fact did not complete her job responsibilities, including adequately cleaning certain areas and appliances in the galley. (R. at 103, 105). In addition, he argues that even if there was no more cooking to do when the ship docked in mid October, there was light work suitable to her physical limitations, such as inventorying linen, vacuuming cabins, and making tags for removed rigging. (R. at 122).

The Commission noted in its decision that the claimant and owner's testimony regarding plans for the end of the season were inconsistent. However, the Commission also stated that they found Claimant's testimony about how her job would end to be credible. (R. at 3). The Commission majority concluded that Capt. Foss and the Claimant had agreed that her job would end when the ship docked, and that no offer was made which she refused. It found that before she left she had thoroughly cleaned and prepared the galley for winter. It also found that the work done by others after she left (which Capt. Foss stated should have been done by the Claimant) were not within the scope of her job as cook, or that they were jobs which she was unable to perform. (R. at 4).

## Standard of Review

The manner and scope of review of final agency action by this Court is defined by 5 MRSA §11007(2) through 11007(4). Subsection 2 states that the Court cannot substitute its judgment on questions of fact. Subsection 4 (C)(5) permits reversal or modification of the agency action if the findings, inferences or conclusions made are not supported by substantial evidence on the whole record.

In this case, Capt. Foss alleges that the decision of the Commission was not supported by substantial evidence on the whole record. He asserts that the Commission ignores undisputed facts in the record, as well as its own factual findings. The Commission on the other hand argues that its finding that Claimant did not refuse an offer of suitable work is supported by competent evidence in the record and is correct as a matter of law.

26 MRSA 1193(A) states that in deciding if work is suitable for an individual, the deputy "shall consider the degree of risk involved to his health, safety and morals, his physical fitness and prior training, his experience and prior earnings, his length of unemployment and prospects for securing work in his customary occupation and the distance of the available work from his residence."

The question of suitability of the work offered is a question of fact. The analysis of suitability also must be made as of the time the offer is made. *Clarke v. Maine Unemployment Ins. Commission,* 491 A.2d 549, 551, 552 fn.2 (Me. 1985). The Claimant has the burden to establish that the work that was offered was unsuitable. *Proctor v. Maine Employment Security Commission,* 406 A. 2d 905 (Me. 1979).

This case is factually atypical from other cases where the Law Court has considered the issue of refusal of suitable work. In other cases, it is usually quite clear that an offer has been made that has been refused. For example, in *Clarke,* the Claimant approached his Employer about taking on a different position on a temporary basis when an opening occurred in that position. When a person other than the Claimant was hired permanently for that position, the employer reiterated to the Claimant his prior offer, namely to return to his former position. The Claimant instead filed for unemployment. The Commission's finding that the Claimant refused an offer of suitable work (i.e., his former position) was affirmed by the Law Court.

In *Lowell v. Maine Employment Security Commission,* 159 Me. 177 (Me. 1963) the Claimant had been laid off from a shoe factory where she performed piece work. She was referred to a different shoe shop that paid hourly, but she was sure she would make less money there, and she anticipated soon being able to return to her former job. When

the employer at the second shoe shop found out she intended to go back to her original job as soon as she could, they rescinded the offer. The Commission and the Law Court found that an offer of work had been made and refused, and then separately analyzed the issue of suitability, holding against the Claimant on that issue as well. Id. at 181, 185. (See also, *Proctor v. Maine Employment Security Commission*, 406 A.2d 905 (Me. 1979); *Grace v. Maine Employment Security Commission*, 398 A.2d 1233 (Me. 1979); *Tobin v. Maine Employment Security Commission*, 420 A.2d 222 (Me. 1980); *Boucher v. Maine Employment Security Commission*, 464 A.2d 171 (Me. 1983); and also, *"Boucher v. Maine Employment Security Commission: The Role of Acceptance in Employment Security Law,"* 36 Me. L. Rev. 439, 1984).

The difficult issue for Capt. Foss in this case is articulating what offer was made that was allegedly refused. Obviously, there was an offer at the beginning of her employment which was accepted. Then, an accommodation of sorts was made early in her employment out of recognition that there were certain kinds of heavy work she simply could not do. Then, in September, there were discussions about the end of the season. However, the Commission majority made an express factual finding that no offer of suitable work was made, much less one refused by the Claimant.

The Commission made another express finding that the Claimant's testimony about how her employment would end was credible. That testimony was that in September she agreed with Capt. Foss that her job would end when the boat returned from its last sail in mid-October, and that she would remain the ship's cook until that occurred. In addition, they agreed that her responsibilities were to thoroughly clean and prepare the gallery for winter. The Commission further found as follows: "By the time

the boat docked on October 11, 2009, the claimant had thoroughly cleaned and prepared the galley for winter and left the boat under the impression that her job as the cook was done." (R. at 3).

The Court can find no record evidence to support Capt. Foss' argument that he made an offer to the Claimant to inventory linens, make tags, vacuum cabins during September 2009 or thereafter. He seems to suggest that because work was available, it must have been offered to her. Claimant has the burden to show lack of suitability and the Court assumes that she has the burden as well to show that no offer was made. While the Commission did not expressly address the issue of burden, the Commission majority was quite clear in its finding that no offer had been made.

Capt. Foss' own testimony establishes much of the Claimant's burden for her. He testified in regards to the September 20, 2009 discussion that he discussed with her what took place in the galley "lay-up." He stated as follows: "*I'm reasonably certain that I did not make it a condition of her departure*, but I did describe all the things that have to happen in the galley to complete the season...." (R. at 120).(Emphasis added). He also described generally what goes on with other crew members at the end of the season and it appears that Capt. Foss was very accommodating with all of his employees as to when they would finish up for the season. (R. at 121). In addition, Capt. Foss testified that during the September 2009 conversation with the Claimant she asked to be excused from the fall lay up work, which he described as "hard heavy work." The clear implication of this statement is that he agreed that she could not perform such hard heavy work. This is also, the Court would note, a conversation which he described as having gone "really

10

well," and nowhere in his description of this conversation does he indicate that he offered lighter work that she refused. (R. at 192,193).

Finally, he described the pre-Labor Day conversation as follows: "It was just prior to our Labor Day trip and I think that's when the subject of full responsibilities came up and the discussion really was, well, you know, try to stick with it and see if you can get the job done, *which is referring to getting the cooking part done*." (Emphasis added.) As noted above, she agreed to do the cooking part, and as the Commission found, completed her duties as a cook.

## Conclusion

The Court finds that there is on the whole record, substantial and competent evidence supporting the Commission majority's finding that no offer of suitable work was made and refused.

The entry will be:

Petitioner's Appeal of final agency action brought pursuant to Rule 80 (C) of the Maine Rules of Civil Procedure is DENIED.

_____            _____
4/10/11                            SUPERIOR COURT JUSTICE
DATE

11

F

Date Filed ___7/13/10___ ___Kennebec___ Docket No. ___AP-10-25___
County

Action ___Petition For Review___
80C

# J. Murphy

John C. Foss                          vs.    Unemployment Insurance Commission

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| John P. Ritzo, Esq.<br>PO Box 7859<br>Portland, ME  04112 | Elizabeth Wyman, AAG<br>6 State House Station<br>Augusta, Maine 04333-0006<br><br>- Andrew Mason, Esq.   (Robin Pietila)<br>P.O. Box 7060<br>97 India Street<br>Portland Maine 04112 |

| Date of Entry | |
|---|---|
| 7/20/10 | Petition For Review Of Agency Action, filed 7/13/10.  s/Ritzo, Esq. |
| 7/20/10 | Photocopies of Certified Mail Receipts, filed 7/16/10.  s/Ritzo, Esq. |
| 7/22/10 | Letter entering appearance, filed. s/Wyman, AAG |
| 8/9/10 | Letter entering appearance, filed. s/Mason, Esq. |
| 8/17/10 | Administrative Record, filed. s/Wyman, AAG   (8/13/10) |
| ----- | **NOTICE AND BRIEFING SCHEDULE ISSUED**<br>Copies mailed to attys. of record. |
| 9/21/10 | Petitioner's Brief on Appeal, filed.  s/Ritzo, Esq. |
| 10/28/10 | Brief of Respondent Maine Unemployment Insurance Commission, filed. s/Wyman |
| 11/10/10 | Petitioner's Reply Brief, filed 11/5/10.  s/Ritzo, Esq. |
| 12/8/10 | Oral argument scheduled for 12/29/10 at 1:45 p.m.<br>Motion/Oral Argument list mailed to attorneys of record. |
| 4/11/11 | ORDER ON RULE 80C APPEAL, Murphy, J. (4/10/11)<br>Petitioner's Appeal of final agency action brought pursuant to<br>Rule 80(C) of the Maine Rules of Civil Procedure is DENIED.<br>Copy to Attys Ritzo and Mason, and AAG Wyman<br>Copy to repositories. |
| 4/11/11 | Notice of Removal of Record mailed to Atty Ritzo and AAG Wyman |