# Beverly B. Nurmi et al v. Vermont Employment Security Board et al

[197 A.2d 483]

October Term, 1963

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

. Opinion Filed December 3, 1963

. Reargument Denied February 4, 1964

*John S. Burgess* for the claimants.

*Raymond S. Fitzpatrick* for the Board.

**Shangraw, J.** This is an unemployment compensation case. The defendants have appealed from a decision of the Brattleboro Municipal Court pursuant to the provisions of 12 V.S.A. §2382.

There are nine claimants, but the basic facts as to all nine are being treated as if there was but one appeal. The municipal court so treated the matter below and made but one decision applicable to all claimants.

The principal claims examiner for the Vermont Unemployment Compensation Commission (now Vermont Employment Security Board) found against claimants who were seeking benefits, after having been laid off by their employer, H. Margolin & Company, Inc. An appeal was taken to the referee with the same result. The claimants then appealed to the commission from the decision of the referee. The decision of the referee, sustaining the decision of the principal claims examiner, was affirmed by the commission and the claims denied.

The claimants then filed a Notice of Appeal and Petition of Review with the Brattleboro Municipal Court under the provisions of 21 V.S.A. §1353. Hearing was held thereon, and upon facts agreed upon by the parties, the court issued its findings and judgment order reversing the decision of the Unemployment Compensation Commission, and entered judgment for the claimants. From this decision appeals were taken by the Vermont Employment Security Board, and by H. Margolin & Company, Inc. as the last employer of the claimants.

At the outset we are confronted with a motion by the claimants to dismiss the appeals. The principal target of the motion is the failure on the part of the Vermont Employment Security Board to pay the Supreme Court entry fee referred to in 32 V.S.A. §1431(1). This provides: "For each action entered in the county court, court of chancery or supreme court, $5.00, which shall be paid before the entry of the cause;" 32 V.S.A. §1432 likewise provides for the pay-

ment of entry fees to the judge of a municipal court for the benefit of the state.

■ By virtue of No. 29, of the Acts of 1961, 32 V.S.A. §1431, as well as §1432, was qualified by the addition of 32 V.S.A. §1432a which reads:

"In judicial proceedings initiated in the name of the state by public officials authorized so to do, the state may not be required to pay the state fees set forth in sections 1431 and 1432 of this title. However, if the state prevails in the proceedings the fees shall be taxed in the bill of costs under sections 1471 and 1474 of this title.

Under §1432a the Vermont Employment Security Board was not required to pay an entry fee on its appeal to this Court.

■ From the motion it may be assumed that the employer failed to pay the Supreme Court entry fee. This was not necessary. By virtue of 12 V.S.A. §2382 the filing of the appeal by the security board permitted either or any of the parties in the case to proceed on appeal.

The decision of the Brattleboro Municipal Court was handed down January 30, 1963, and notwithstanding the timely appeals taken, certification was not received by the clerk of the general term until May 24, 1963. The claimants assert in their motion to dismiss a violation of Supreme Court rules 5 and 8. These rules relate to a hearing of cases before this Court, and time for the filing of briefs. In consideration of the circumstances present, and as a matter of discretion, these grounds do not require favorable action on the motion. The motion to dismiss is denied.

In order to afford a bird's-eye view of the factual situation, and issues presented, we quote in part from the findings and decision of the Brattleboro Municipal Court.

"The claimants are women who had been employed on the night shift by H. Margolin & Co., Inc., in Brattleboro. They were laid off when the night shift was discontinued. About two weeks later, they were offered the same type of work, at comparable pay, on the day shift. They had children requiring day-

time care, or else had some similar domestic problem, and for this reason they limited their availability to night shift employment and declined to apply for the day work. There is a market in Brattleboro for night labor of the type for which the claimants were fitted by training and experience, but at the time in question no openings were available. The day work offered was suitable, in the sense that it did not involve risk to the claimant's health, safety and morals, and in all respects met the requirements enumerated in Title 21 Section 1344(3)(A).

"The counsel agreed and the court finds that all conditions of eligibility for unemployment compensation as specified in section 1343 are met by the claimants, except that as to the requirement of subsection (3) that they be "available for work," the employer and the commission contend that the claimants' inability to accept daytime work renders them not available within the meaning of this subsection.

"In each case the claim for compensation was denied by the referee, the principal claims examiner and the Commission, on the grounds that claimant had declined an offer of suitable work and was not available for work. The Commission held that the domestic circumstances of each claimant did not make daytime work unsuitable nor constitute good cause for refusing suitable work, and that her restriction to night work rendered her not available for work."

The court below held "that the claimants were available for work notwithstanding the restriction they placed upon the hours they would accept employment, and that they had good cause to refuse an offer of suitable work during the hours they were required by domestic conditions to spend at home." In each case the decision of the Unemployment Compensation Commission was reversed, and judgment entered for the claimant.

The precise question presented is whether or not the claimants, with child-care or other similar domestic problems, can restrict their hours of employment and still remain "available for work" under the provisions of 21 V.S.A. §1343(3).

Section 1343(3) provides that an unemployed individual shall be eligible to receive benefits if "He is able to work and is available for work;" Under section 1344(3), an individual shall be disqualified

for benefits, "If the commissioner finds that he has failed, without good cause, either to apply for available, suitable work when so directed by the employment office or the commissioner or to accept suitable work when offered him, . . ."

Subsection A of section 1344(3) sets forth factors to be considered by the commissioner in evaluating the suitability of the work. This reads:

"(A) In determining whether or not any work is suitable for an individual, the commissioner shall consider the degree of risk involved to his health, safety and morals, his physical fitness and prior training, his experience and prior earnings, his length of unemployment and prospects for securing local work in his customary occupation, and the distance of the available work from his residence."

The purpose of unemployment compensation statutes is to compensate for lack of appropriate job vacancies, thereby relieving distress resulting from unemployment and subsequent economic insecurity. The act is intended to assist unemployed persons who, under the limitations and conditions imposed by the legislature, are entitled to its benefits. This court is not at liberty to read into the statute provisions which the legislature did not see fit to incorporate, nor may it enlarge the scope of its provisions by an unwarranted interpretation of the language used. *Ford Motor Co.* v. *Unemployment Compensation Commission,* 316 Mich. 468, 25 N.W.2d 586.

The phrase "available for work" is not defined in the statute. The availability requirement is said to be satisfied, ". . . when an individual is willing, able, and ready to accept suitable work which he does not have good cause to refuse, that is, when he is genuinely attached to the labor market." *Roukey* v. *Riley,* 96 N. H. 351, 352, 77 A.2d 30, 31. See Freemen, Able to Work and Available for Work, (1945) 55 Yale Law Journal, 123, 124.

The availability requirement, under the statute, was discussed in the case of *Willard* v. *Unemployment Comp. Comm.,* 122 Vt. 398, 173 A.2d 843. At pages 404 and 405 this court stated: "The conditions and limitations which a claimant imposes upon his employment, whether voluntary or involuntary, may render him unavailable for work and bar his recovery of unemployment benefits. A willing-

ness to be employed conditionally does not necessarily meet the test of availability." *Ellis* v. *Employment Security Agency*, 23 Idaho 95, 358 P.2d 396, 398; 81 C.J.S. Social Security and Public Welfare, section 204, p. 304. Limitations placed on availability for employment have the effect of circumscribing the labor market to which the claimant asserts attachment. If the imposed conditions are used to justify the refusal of suitable employment, yet have no sound causal basis, the statute bars the recovery of benefits. 21 V.S.A. §1344(3)."

In referring to the "suitability" of the work the municipal court made the following observation in its findings: ". . . under the circumstances of these cases daytime work of the character offered to the claimants cannot be considered unsuitable. It was of a sort for which they were trained, it was not dangerous or inappropriate, it was within their physical and mental capacity, and it had no tendency to injure their health or morals or to deprive them of family life."

This leads us to the ultimate question, that is, whether these claimants had "good cause" to refuse the offer of suitable daytime work, as that term is used in 21 V.S.A. §1344(3) and related subsection (A).

■ It is impossible to give a general definition of the words "good cause" as used in statutes disqualifying individuals from claiming benefits where they fail to apply for or accept work or employment without good cause. The meaning must be determined in each case from the facts of that case. 81 C.J.S. Social Security and Public Welfare, section 200, p. 295.

■ 21 V.S.A. §1344(1) disqualifies a person from the benefits of the act when he has left the employ of his last employing unit "voluntarily without good cause attributable to such employing unit." Conversely, it may be implied from the statute that a worker cannot decline employment except for a good cause connected with the work itself, rather than on account of personal inconvenience or a home problem. It goes without saying that everyone has occasion to make some personal adjustment in life in connection with his or her employment.

Subsection (A) of section 1344(3) refers to certain factors to be considered by the commission in determining whether or not any work is suitable for an individual. There is nothing in the statute

to justify the conclusion that the legislature intended that a claimant might limit his employment to certain hours of the day, where the work they were qualified to perform is not likewise limited. It can hardly be said that the act intends benefits for a worker compelled to give up his job, or decline employment, solely by reason of home conditions, such as here.

In *Ford Motor Co. v. Appeal Bd. of Mich. Unemployment Comp. Comm.*, 316 Mich. 468, 25 N.W.2d 586, 587, it was held that a claimant who restricted her availability for employment in the afternoon shift in order that she might care for her two children earlier during the day, was not "available for work" so as to be eligible for unemployment compensation benefits. For cases to the same effect, see *Judson Mills v. South Carolina Unemployment Comp. Comm.*, 204 S.C. 37, 28 S.E.2d 535; *Goings v. Riley*, 98 N. H. 93, 95 A.2d 137; *Moore v. Commissioner*, 197 Tenn. 444, 273 S.W.2d 703; *Swanson v. Minneapolis Honeywell Regulator Co.*, 240 Minn. 449, 61 N.W.2d 526. In the case of *LeClerc v. Admr.*, 137 Conn. 438, 78 A.2d 550, a woman who limited her availability for work to the hours between 3:30 and midnight, because of her domestic responsibilities, was held unavailable for work. At p. 440 of the opinion the court stated: "The case is not one where some compelling reason, beyond her control, limited her to the hours of work prescribed by her. The act was never intended to guarantee anyone a job identical in kind and hours with that which he had previously held."

It is our view that the claimants have failed to show "good cause" for refusing employment offered them, and they are therefore not "available for work" within the meaning of the act in question. Admittedly there are cases in other jurisdictions holding to the contrary under circumstances similar to those present in this controversy. For cases in support of each view, see *Tung-Sol Electric Inc. v. Board of Review*, 35 N. J. Super. 397, 114 A.2d 285. The great weight of judicial decisions supports the view we take in this case. The claimants cannot prevail.

In their brief, the claimants have urged that the decision of the lower court be affirmed, or, in the alternative, remand the case for a determination and finding by the court below as to what would be a reasonable adjustment period as to each of the nine claimants. It is

claimed by them that they are, in any event, entitled to a period of adjustment to the labor market following their lay-off, citing as authority 21 V.S.A. §1344(3), subsection (A).

We fail to see how such relief is afforded under the above statute, or in fact any statutory provision. Had the legislature intended such relief it would have said so. It is not for us to legislate. Such relief, if granted, would have the effect of extending benefits not contemplated by the legislature.

The record discloses that the claimants were laid off November 4, 1960. During the week ending November 19, 1960 they received notice of the day shift. Claims for, and subsequent to November 19, 1960 were denied by the commission. We adopt this as the correct result. Judgment must be reversed.

*Judgment reversed and cause remanded.*

**Holden, J.,** concurring. I am in agreement with the holding of the majority on the principal question; namely, that the claimants cannot restrict their availability to the labor market by the imposition of conditions dictated by personal convenience to themselves or their families. I doubt that the subordinate question relating to the adjustment period is before us. Decision on this issue was expressly withheld by the court below.

Whether such a transition time is compensable depends on whether the claimant had good cause to refuse the first job opportunity at a time in conflict with her family responsibilities. And, as the main opinion correctly points out, decision on this issue must depend on the facts of each case.

The court below has found, "There is a market in Brattleboro for night labor of the type for which the claimants were fitted by training and experience." As long as such a market was open, it seems reasonable that the claimants should be afforded an opportunity to compete for such work or to readjust their domestic affairs to accommodate the demands of daytime employment.

Decision on whether benefits should be available in this interval should be left to the administrative discretion of those charged with the responsibility of enforcing the act. We should not undertake to give a categorical answer to the problem when the precise point is not presented to us.

## On Motion for Reargument

**Shangraw, J.** Upon the handing down of the opinion in the above case the plaintiffs moved for leave to reargue. By reason of matters brought to our attention relating to the correct parties appellant, as well as the section of the statute under which the appeals were taken, the opinion was recalled and these changes have been made.

Other than the foregoing, the motion presented no points which were overlooked, misapprehended or not covered in the opinion.

The revision of the opinion does not change the result previously reached, and the entry order is not affected. No ground for reargument appears. The motion is denied.