# Joyce C. Hunt v. Department of Employment Security

[453 A.2d 391]

No. 144-81

Present: Barney, C.J., Billings, Hill, Underwood and Peck, JJ.

Opinion Filed October 12, 1982

*Elliot M. Burg*, South Royalton Legal Clinic, and *Marc Eagle* and *E. Matthew Mains*, Law Clerks (On the Brief), South Royalton, for Plaintiff-Appellant.

*Matthew R. Gould*, Montpelier, for Defendant-Appellee.

**Barney, C.J.** The claimant was denied unemployment benefits at all stages of review up to and including the review by the Employment Security Board. She challenges that decision here.

The claimant had been employed at a plastics company in Bethel, Vermont, for two years on the day shift when she, with others, was laid off because of lack of work. The claimant lived about 15 miles from the plant, in the town of Pittsfield. Her husband was employed in Rutland and used the family car to get to work. She rode to work with a neighbor also employed at the plastics company.

About twelve days after her lay-off she was recalled and offered work at her usual pay, doing work she had previously done, on a later shift. Her neighbor was not recalled. She asked her employer to check to see if anyone else on that shift was from her area, but no one was found. The claimant then declined the recall. This meant she lost her recall seniority, but she was kept on the recall list.

Since the lay-off, the claimant has looked for employment in a variety of jobs, concentrating on the Rutland and Pittsfield areas. She felt, and indicated, that transportation in that area would present no obstacle during normal working hours because her husband works in Rutland and many other people commute there from Pittsfield. The finding as to her availability for work as required by 21 V.S.A. § 1343, made by the appeals referee, is not in serious question, and is not challenged here.

But we agree with the referee that in this case that circumstance is not dispositive. While the claimant rests her argument very heavily on the issue of availability as part of her claim that her real attachment is to the Rutland labor market and that she therefore had "good cause" under 21 V.S.A. § 1344 to refuse her former employer's job offer, the Department appropriately calls us back to the purpose of the enactment. Although the claimant would have us apply the unemployment act to her case by stringing together a series of opinions setting out interpretations of statutory words or phrases, each case must stand on its facts against the legislative objective.

The unemployment compensation program is designed to assist members of the working force who are made jobless by the operations of the economy over which they have no control. *Willard* v. *Unemployment Compensation Commission*, 122 Vt. 398, 402, 173 A.2d 843, 846 (1961). The burden is placed upon the employers generally by operation of the unemployment compensation fund assessments even though they, too, may have no control over the economic situation. See 21 V.S.A. § 1325. The policy of the statute is that the employers are, by and large, in a better position to bear a share of the economic cost than are individual workers, and the penalty assessments may tend to prevent casual lay-off decisions.

In any case, the statutory purpose is directed at relief

for involuntary joblessness. As was pointed out in *Nurmi* v. *Employment Security Board*, 124 Vt. 42, 46, 197 A.2d 483, 486 (1963), the enactment is intended to assist unemployed persons who are entitled to be benefited under the limitations and conditions imposed by the legislature, and the Court is not free to enlarge its scope by an unwarranted interpretation of statutory language. *Lane* v. *Department of Employment Security*, 134 Vt. 9, 10, 347 A.2d 454, 455 (1975).

Many of our cases have parsed the phrases and dissected the sentences of the statutes in order to extract the essence of legislative meaning. But, as *Willard* suggests, such efforts often compound the problem by the introduction of new terms, new descriptive words. *Willard* v. *Unemployment Compensation Commission, supra,* 122 Vt. at 402, 173 A.2d at 847. The overtones of meaning and association clinging to the new language frequently distort the dimensions of the original phrases, and lead to fruitless pursuit of differences far removed from the original objectives of the enactment.

There is danger of that sort in this case unless we keep firmly in mind the stated scope of the statute and its general purpose. All of the parts must be taken together, since each part is an attempt to express, by those most imprecise of devices, words, the kind and measure of relief the statute is intended to give, and the qualifications necessary to receive it.

Variations in fact patterns are apt to be significant, if not critical, in these cases. The important factual concerns in this case are that the job offer refused was from the very employer that had laid her off. There was no wage reduction. The claimant had made no change in residence since lay-off. The only change in the job was a shift change, which required her to resolve her transportation problem in some other way. In these particulars this case is enough like *In re Barcomb*, 132 Vt. 225, 231, 315 A.2d 476, 480 (1974), and *In re Prouty*, 131 Vt. 504, 508, 310 A.2d 12, 15 (1973), to support, as a matter of law, the Board's denial of benefits.

The claimant urges that her situation is governed by our decision in *Palucci* v. *Department of Employment Security,* 135 Vt. 156, 376 A.2d 14 (1977). The issue in that case was the unsupported declaration by the Board that, for purposes of employment as a breakfast waitress, the labor market of the

claimant involved reached outside her Rutland market attachment to include the mountain section of Mendon. In that case, although the disposition did not hinge upon it, it was pointed out that "good cause" in refusing a job referral has a component of reasonableness which can include hours of work, pay scale and distance of travel.

However, it must be remembered that the burden of establishing such reasonableness rests upon the claimant. *Martin* v. *Department of Employment Security,* 138 Vt. 475, 477, 417 A.2d 932, 934 (1980). Here the Board found that the evidence tendered by the claimant as to the transportation problem was insufficient to support a finding that the impediment provided a reasonable ground for refusing the proffered employment. This determination of the Board must be credited as being supported by the record. *Lanctot* v. *Department of Employment Security,* 134 Vt. 281, 284, 356 A.2d 531, 533 (1976).

The purposes of the act do not include the right to compensation because personal considerations make acceptance of a suitable job offer inconvenient or difficult, or require an adjustment in a claimant's personal situation that he or she is individually unwilling to make. In such circumstances it is for the Board to measure the justifications for refusal against the statutory test for availability, 21 V.S.A. § 1343. *Nurmi* v. *Employment Security Board, supra,* 124 Vt. at 48, 197 A.2d at 486.

The fund from which this claimant seeks benefits is contributed to by her former employer, based in part on the number of persons for whose unemployment it is responsible. It would be incongruous indeed to enlarge that assessment for the unemployment of this claimant for whom this employer has a job waiting. This is not the basic function the unemployment compensation act was designed to perform. *In re Barcomb, supra,* 132 Vt. at 235, 315 A.2d at 482.

*Judgment affirmed.*