## Lynette Shufelt v. Department of Employment and Training

[531 A.2d 894]

No. 84-526

Present: **Allen, C.J., Hill, Peck, Gibson and Hayes,\* JJ.**

Opinion Filed June 12, 1987

---

\* Justice Hayes was present at oral argument but took no part in the decision.

*Sheila Reed, Dinah Yessne,* and *Sara Williams,* Paralegal (On the Brief), Vermont Legal Aid, Inc., St. Johnsbury, for Plaintiff-Appellant.

*Brooke Pearson,* Montpelier, for Defendant-Appellee.

**Gibson, J.** Claimant appeals a determination by the Employment Security Board denying unemployment benefits because she failed to meet the requirement that she be available for work, having refused a night shift job because of parental responsibilities. We reverse and remand.

Claimant worked for 18 years as a weaver, and was laid off on April 27, 1984 by the Caledonia Manufacturing Corporation, where she had previously worked on the first shift, 7:00 a.m. to 3:00 p.m. On May 17, 1984 she was offered a job by the same company on the third shift, 11:00 p.m. to 7:00 a.m. She declined the recall, giving as her reason concern as a single parent about leaving her three teenage daughters alone at night in light of what she characterized as frequent threats and harassment by her ex-husband, the girls' father.

The referee refused to accept this reason as "good cause" under 21 V.S.A. § 1344(a)(2)(C),[1] relying on this Court's holding in *Nurmi* v. *Employment Security Board,* 124 Vt. 42, 197 A.2d 483 (1963), where on similar facts night shift employees who had been laid off when that shift was discontinued were denied benefits for declining work on the day shift because of the need to care for their children during the day. The referee also concluded that

---

[1] 21 V.S.A. § 1344(a)(2)(C) states that:
    (a) An individual shall be disqualified for benefits:

    . . . .

      (2) For any week . . . if the commissioner finds that such individual is unemployed because:

    . . . .

      (C) He has failed, without good cause, either to apply for available, suitable work when so directed by the employment office or the commissioner, or to accept suitable work when offered him, . . . .

claimant failed to meet the requirement that she be "available for work" in accordance with 21 V.S.A. § 1343(a)(3).[2] In a split decision, the Board affirmed, the majority concurring with the reasoning of the referee.

■ The fundamental issue herein is whether claimant had "good cause" within the meaning of 21 V.S.A. § 1344(a)(2)(C) for her refusal to accept work on the third shift. The burden rests with claimant to show that the refusal was for good cause. *Gutches* v. *Department of Employment Security*, 141 Vt. 587, 590, 450 A.2d 1146, 1147 (1982). In determining whether good cause exists for a refusal to accept suitable work when offered, this Court must decide each case on its own facts. *Nurmi*, 124 Vt. at 47, 197 A.2d at 486. The criterion to be followed in making such decision is one of reasonableness, that is, what a reasonable person would be expected to do in the same circumstances. *Palucci* v. *Department of Employment Security*, 135 Vt. 156, 159, 376 A.2d 14, 16 (1977). The burden of establishing such reasonableness rests upon the claimant. *Hunt* v. *Department of Employment Security*, 142 Vt. 90, 94, 453 A.2d 391, 393 (1982).

The foundation of the referee's decision, and the Board's affirmance, is this Court's decision in *Nurmi*. Claimant contends that *Nurmi* was erroneously decided. Upon reexamination of the basis of that decision, we agree with claimant that the Court in *Nurmi* erroneously construed what is now 21 V.S.A. § 1344(a)(2)(C),[3] and to the extent that *Nurmi* is in conflict with the decision herein, it is overruled.

■ In interpreting statutes, we are guided by certain rules of statutory construction. The primary objective, of course, is to give effect to the intention of the Legislature. *In re Village of Hardwick Electric Department*, 143 Vt. 437, 444, 466 A.2d 1180, 1183 (1983). When the meaning of a statute is plain on its face, we must enforce it according to its express terms. *Jones* v. *Department of Employment Security*, 140 Vt. 552, 554, 442 A.2d 463, 464 (1982). We must also bear in mind that the Unemployment

---

[2]  21 V.S.A. § 1343(a) provides that "[a]n unemployed individual shall be eligible to receive benefits with respect to any week only if the commissioner finds that:
. . . .
   (3) He is able to work, and is available for work; . . . ."

[3]  At the time *Nurmi* was decided, the statute was designated 21 V.S.A. § 1344(3). Although it has been amended since then, the statute has not been changed in substance.

Compensation Act is remedial legislation to be construed liberally in favor of claimants, *id.*, and, in this case, that the "time-honored precept" of *expressio unius est exclusio alterius* also pertains. See *Grenafege* v. *Department of Employment Security,* 134 Vt. 288, 290, 357 A.2d 118, 120 (1976).

In construing the term "good cause," as set forth in 21 V.S.A. § 1344(3), the *Nurmi* Court stated that

> 21 V.S.A. § 1344(1)[4] disqualifies a person from the benefits of the act when he has left the employ of his last employing unit "voluntarily without good cause attributable to such employing unit." Conversely, it may be implied from the statute that a worker cannot decline employment except for a good cause connected with the work itself, rather than on account of personal inconvenience or a home problem.

*Nurmi,* 124 Vt. at 47, 197 A.2d at 486-87. Thus, although § 1344(3) itself made no reference to an employing unit, the Court read into § 1344(3) by implication the modifying phrase "without good cause attributable to such employing unit."

Shortly after *Nurmi* was decided, the North Carolina Supreme Court, in construing a statute similar to Vermont's, reached a result diametrically opposed to that of *Nurmi.* It succinctly stated its reasoning, as follows:

> When, in two paragraphs of the same section of a statute, the legislature provides for disqualification of a claimant who leaves his old job without "good cause attributable to his employer" and for disqualification of one who rejects new work without "good cause," we think it evident that the legislature, for some reason satisfactory to it, intended to make the difference between the two situations which its language expresses. That is, a factual situation which may be "good cause" for rejecting a proposed new employment need not be connected with the proposed work itself. The

---

[4] Now designated 21 V.S.A. § 1344(a)(2)(A). Although amended since *Nurmi* was decided, the statute has not been changed in substance. It reads:

(a) An individual shall be disqualified for benefits:

. . . .

(2) For any week . . . if the commissioner finds that such individual is unemployed because:

(A) He has left the employ of his last employing unit voluntarily without good cause attributable to such employing unit. . . .

wisdom of such distinction is for the legislature, our authority being merely to determine the meaning of the words it used.

*In re Watson*, 273 N.C. 629, 639, 161 S.E.2d 1, 10 (1968).

In *Grenafege*, the Court resolved a problem of statutory construction analogous to the one confronting us here. In deciding that wages earned during the base period from employers not subject to the act, and from employment excluded from the act, must be included in computing the weekly benefits of a qualified claimant, the Court noted that in the applicable provision of the act as it then existed,[5] the word "wages" was not restricted to wages of the subject employment, although reference to such employment was expressly made in other related statutes. The Court concluded that "where the Legislature meant 'wages' to mean those earned in subject employment it said so, and that where it did not say so it intended no such restriction." *Grenafege*, 134 Vt. at 290, 357 A.2d at 120.

The same logic is equally applicable to 21 V.S.A. § 1344. Where the Legislature meant "good cause" to be attributable to the employer in § 1344(a)(2)(A), it plainly said so; where it did not say so in § 1344(a)(2)(C), it intended no such restriction.

We note that, subsequent to *Nurmi*, this Court has already modified its stance in at least one significant respect. The Court no longer is of the view that "hours of the day" is an irrelevant consideration in determining the suitability of work for an individual. In *Nurmi*, the Court, analyzing the statutory factors to be considered in determining whether or not work is suitable for an individual, observed that:

> There is nothing in the statute to justify the conclusion that the legislature intended that a claimant might limit his employment to certain hours of the day, where the work they were qualified to perform is not likewise limited.

*Nurmi*, 124 Vt. at 47-48, 197 A.2d at 487. In *Palucci*, however, the Court, in reversing a Board order that would have required the claimant to furnish transportation to a potential job outside her labor market area, stated:

---

[5] The statute in question, 21 V.S.A. § 1338(b), has since been amended by the Legislature.

we do not reach what appears, at least, to be the ironclad assumption of the Board that a claimant can never refuse a referral within his labor market area because of lack of transportation and still escape disqualification. Like most generalities, so stated it is too broad in scope. In our view, like the test of availability set forth in [*In re*] *Dunn*, [131 Vt. 261, 305 A.2d 602 (1973)] reasonableness, or what a reasonable person would be expected to do in the same circumstances, is the criterion for "good cause" in refusing a work referral or offer of employment. Hours of work may be as significant as distance of travel, and pay scale is also significant.

*Palucci*, 135 Vt. at 159, 376 A.2d at 16. Likewise, in *Hunt*, 142 Vt. at 94, 453 A.2d at 393, the Court reiterated "that 'good cause' in refusing a job referral has a component of reasonableness which can include hours of work, pay scale and distance of travel."

With respect to the issue of whether claimant met the requirement that she be "available for work" in accordance with 21 V.S.A. § 1343(a)(3), we have held that " 'the question of availability lends itself to resolution solely on a case by case basis, and that only when the facts peculiar to the claim under review "deny the existence of *reasonable* availability" could benefits be refused.' " *Stoodley* v. *Department of Employment Security*, 141 Vt. 457, 463, 449 A.2d 980, 983 (1982) (emphasis in original) (quoting *Carson* v. *Department of Employment Security*, 135 Vt. 312, 315, 376 A.2d 355, 357-58 (1977)).

The Rhode Island Supreme Court considered a similar availability question in *Huntley* v. *Department of Employment Security*, 121 R.I. 284, 397 A.2d 902 (1979). In *Huntley*, the claimant was a second-shift worker who lost several months of work due to illness. When she sought to return, only first-shift work was available, and she informed the employer that she could not accept work on this shift because she had four children under age 13, including a nine-year-old son who had muscular dystrophy and had to be walked to school. In overruling an earlier case that had mandated 24-hour availability without restrictions of any kind, the Court acknowledged that "parental responsibility may constitute good cause for limiting availability, so long as such limitation does not substantially impair a claimant's attachment to the labor market." *Id.* at 291, 397 A.2d at 906; see also *Sanchez* v. *Unem-*

*ployment Insurance Appeals Board*, 20 Cal. 3d 55, 71, 569 P.2d 740, 750, 141 Cal. Rptr. 146, 156 (1977) (Parental responsibilities constitute good cause for restricting availability, even though restriction might be significant, so long as claimant is still available to a "substantial field of employment.").

■ We now hold that the demands of parental responsibility may constitute good cause for limiting employment to certain hours of the day upon a clear showing that such limitation is necessary and reasonable. As in *Huntley*, the test we now require is a two-part test. A showing of good cause is the first stage a claimant must pass in order to demonstrate eligibility. If the Department determines that a claimant has shown good cause, the Department must then determine whether the restrictions, even with good cause, substantially impair the claimant's attachment to the labor market. The Rhode Island Supreme Court in *Huntley* explained the concept of substantial impairment with the following example:

> For example, if a claimant, as in several cases cited, is unavailable for work for 2 or 3 hours out of the 24, in a multishift industry, it would be harsh, indeed, to declare such an employee unavailable. If a claimant placed such restrictions upon availability that he would only be available 2 or 3 hours out of 24 for work of a nature which he was able to perform, however good the cause or compelling the reason, he would have in effect removed himself from the labor market and could not, therefore, be eligible for employment benefits.

*Id.* at 293, 397 A.2d at 907.

We have little doubt that the Department will have the capability of evaluating both prongs of the test we announce today. If the Department demonstrates that a claimant has failed to apply for work and that work which appears to be available and suitable has been called to claimant's attention by the employment officer or the commissioner, then under 21 V.S.A. § 1344(a)(2)(C) it will be incumbent upon the claimant to come forward with reasons showing good cause why no application for the work was made. The referee or the Department will have to weigh each claimant's case against the constraints which a reasonable parent in similar circumstances might express, taking into consideration the age

and number of the children and any individual circumstances for which there is specific and credible evidence on the record.

At the second stage, the referee or the Department will have to evaluate whether, as a practical matter, the claimant is still substantially attached to the labor market. It is possible for a claimant to be so overburdened with parental or domestic considerations that availability for work is virtually excluded, and the claimant thereby rendered ineligible for benefits. This does not suggest that a particular claimant might exaggerate the domestic circumstances, but simply that the circumstances, even if reasonable, may virtually eliminate the possibility of employment.

Applying this standard to the matter before us, we determine that the decision of the Employment Security Board should be reversed and the matter remanded to the Board for a determination of eligibility based upon the test we here announce.

*Reversed and remanded.*

