## Constance G. Isabelle v. Department of Employment and Training

[554 A.2d 660]

No. 86-478

Present: **Allen, C.J., Peck, Gibson, Dooley and Mahady, JJ.**

Opinion Filed October 7, 1988

*Robert B. Chimileski*, Newport, for Plaintiff-Appellant.

*Steven Freihofner*, Montpelier, for Defendant-Appellee.

**Gibson, J.** Claimant appeals from a denial of unemployment compensation benefits by the Employment Security Board (Board). We reverse.

Claimant was employed simultaneously by the Derby School District and the Orleans-Essex North Supervisory Union. She worked forty-five hours a week as a bookkeeper under one supervisor and in one office located at the Derby School. From the inception of her employment, claimant reported to one Superintendent of Schools, who for all practical purposes acted both as claimant's direct supervisor for the work she performed for the Derby School District, and as de facto agent for the Orleans-Essex North Supervisory Union. All job negotiations between claimant and each employer were conducted through the Superintendent. Claimant was extended benefits, including life insurance, health and retirement benefits, for which part-time employees were ineligible. Her health insurance premiums were paid entirely by the Orleans-Essex North Supervisory Union, and her eligibil-

ity for such benefits flowed as a direct result of the combined hours she worked at both positions.

After signing a renewal contract for the Derby position and upon inquiring of her supervisor as to the renewal of the Orleans-Essex North Supervisory position, claimant was informed that the Orleans-Essex job would not be renewed, primarily as a result of funding cuts. She was informed, in addition, that she faced the loss of her benefits because she was no longer to be working more than thirty hours a week. After reconsidering her decision, claimant tendered a letter of resignation to the Derby School Board and applied for unemployment compensation. The Department of Employment and Training (Department) first determined that she was entitled to compensation because she had left her employment for good cause, having encountered a substantial reduction in hours, wages and benefits. The Derby School Board appealed. The appeals referee sustained the determination. Upon further appeal, the Employment Security Board reversed, concluding that claimant had left her employment with the Derby Elementary School without good cause and, therefore, was disqualified from unemployment benefits for that position.

Claimant raises two issues on appeal. First, she asserts that her resignation, in response to a substantial reduction in wages and benefits, was for good cause. Second, claimant argues that she was deprived of a fair hearing before the Board, because it considered sworn testimony and admitted new evidence, contrary to its representations to her that new evidence would not be admitted in the appeals hearing, and that her absence would not adversely affect her claim.

It is important at the outset to delineate the scope of our review. The Board has the power to affirm, modify or reverse the decision of the referee, within the bounds of fundamental fairness. *Kaufman* v. *Department of Employment Security*, 136 Vt. 72, 74, 385 A.2d 1080, 1082 (1978). In evaluating the referee's determination, the Board must consider the employer's internal hiring procedures in light of the remedial and beneficial purposes of the Vermont Unemployment Compensation Act. *In re Gray*, 127 Vt. 303, 305, 248 A.2d 693, 695 (1968); see also *Jones* v. *Department of Employment Security*, 140 Vt. 552, 554, 442 A.2d 463, 464 (1982) (broad remedial interpretation of the Unemployment Compensation Act). We must determine whether the facts in the

record support the result reached or compel a different result as a matter of law. *Gray*, 127 Vt. at 305, 248 A.2d at 695.

Claimant worked at both positions from the beginning of her employment. The full-time benefits she received served as an inducement to her to provide bookkeeping services to both school boards, each of which benefited from claimant's full-time availability. They also enjoyed a savings in overhead costs as a result of the arrangement.

■ A claimant who seeks unemployment benefits after having resigned a position bears the burden of proving that her resignation was for good cause. *Shufelt* v. *Department of Employment & Training*, 148 Vt. 163, 165, 531 A.2d 894, 896 (1987). In determining what constitutes "good cause," we must review each case according to a standard of reasonableness — i.e., what a reasonable person would have done in the same circumstances. *Id.* Claimant was induced to work in her job by the availability of full-time employment and its concomitant benefits. All negotiations were handled by claimant's supervisor, as would have been the case had she worked for a single entity. Claimant's responsibilities, job location and rate of pay for each position were identical. Given these circumstances, we find that claimant's resignation was a reasonable response to a substantial change in her working conditions. See *LaRose* v. *Department of Employment Security*, 139 Vt. 513, 515, 431 A.2d 1240, 1242 (1981) (40% reduction in employee's wages resulting from reduction in working hours was sufficient to warrant a finding that employee quit for just cause). The Board erred in concluding that the claimant had resigned her position without good cause, attributable to her employer. See *Shufelt*, 148 Vt. at 165, 531 A.2d at 896.

In light of our disposition of this claim, we need not address appellant's second issue.

*Reversed and remanded to the Board for a determination of benefits due the claimant.*

**Peck, J.,** dissenting. I disagree with the result reached by the majority. In my view it is plainly based, not on the law as prescribed by the legislature, but on personal and purely subjective feelings of sympathy. These are emotions everyone shares, but to which not everyone surrenders, when, to do so produces a decision contrary to law and beyond the legitimate powers of this

Court. The majority simply twists and, in effect, rewrites the statutes to suit its purpose.

The claimant's situation here was essentially no different than that of any other person who holds two jobs, each under a separate employer. So-called "moonlighting" is, perhaps, the classic example. The mere fact that one of the jobs is eliminated does not give rise to "just cause," under the controlling statutes as they now exist, for that person's leaving the other to the extent of becoming thereby entitled to unemployment benefits.

I will not debate the possibility that the law may be harsh as applied to a particular circumstance, except to remind the majority that if statutes are felt to be unfair, this Court has held in many cases that the remedy lies with the legislature, not the courts. For two relatively contemporary cases see *Cavanaugh* v. *Abbott Laboratories*, 145 Vt. 516, 531, 496 A.2d 154, 163 (1985) (citing *King* v. *Snide*, 144 Vt. 395, 404, 479 A.2d 752, 756 (1984). Earlier cases, to the same effect, span the years; see, for example, *Donoghue* v. *Smith*, 119 Vt. 259, 267, 126 A.2d 93, 98 (1956).

The fact that claimant worked both jobs under a single supervisor and in one location is mere window dressing blown out of all proportion to its legal relevance by the majority. These factors were no more than matters of convenience to both the claimant and the two employers. The two jobs remained separate and distinct as did the employers; no exercise in semantics can change that, nor does the majority's usurpation of both the legislative and executive powers and functions, including, most egregiously in this case, a decision relating to the expenditure of money belonging to the people of Vermont, justify the result.

The Board's action is clearly supportable as a matter of law. Accordingly, the majority has no right to tamper with a quasi-judicial decision of an executive-branch agency, created and empowered by the legislature to make those decisions,* unless the agency's conclusions are clearly erroneous. See *Delneo* v. *Department of Employment & Training*, 148 Vt. 388, 390, 533 A.2d 1190, 1191 (1987). The order of the Board should be affirmed.

---

* See the Vermont Constitution, Chapter II, § 5 (separation of powers).