## Karen L. Skudlarek v. Department of Employment and Training; Portland Street Corp., Employer

[627 A.2d 340]

No. 91-502

Present: **Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed March 26, 1993

Motion for Reargument Denied June 1, 1993

---

*James C. May*, South Royalton Legal Clinic, and *A.J. Ruben* and *Glynis MacVeety*, Law Students, South Royalton, for Plaintiff-Appellant.

*Brooke Pearson*, Montpelier, for Defendant-Appellee Department of Employment and Training.

**Dooley, J.** Claimant Karen Skudlarek appeals from a decision of the Vermont Employment Security Board denying her unemployment compensation benefits because she voluntarily quit her job as a nurse's aide at the Tranquility Nursing Home. We conclude that her voluntary termination was with good cause attributable to her employer and reverse.

Claimant was employed for a period of fourteen months at the nursing home. She was hired as a part-time worker for three eight-hour days per week on Mondays, Wednesdays and Fridays. In December of 1990, the nursing home modified its patient care procedures so that employees would be assigned to specific patients. In the new procedures, it was unwilling to allow employees to work only part time, and in February 1991, notified claimant that her position was being converted to full time. She was offered the full-time job or, alternatively, a weekend schedule that was considered full time for twenty-four hours (two twelve-hour days) of work. She considered but declined the offers because of child care difficulties. She was told that if she changed her mind by March 1st she probably could still have the full-time job.

She requested the full-time weekday job on February 25th, but the position had already been filled. The employer offered to allow her to fill in for another full-time employee who was going on medical leave, to continue as a substitute after the medical leave ended, and to give her the next full-time permanent position that arose. When claimant rejected this alternative, she was laid off on March 1, 1991.

Both the referee and the Employment Security Board found that claimant "left the employ of her last employing unit voluntarily without good cause attributable to such employing unit" because she refused to continue under the terms offered by the employer. She was denied benefits pursuant to 21 V.S.A. § 1344(a)(2)(A). The Board found that claimant was aware that her work schedule could be changed and had resolved her child care problems; consequently, there was no good cause for her refusal to continue working under the new conditions. The Board summarized its rationale as follows:

> While there is no question that unilateral changes effected by an employer which have an adverse impact on an employee can provide that individual with the requisite good cause attributable to the employer to quit his or her job without disqualification for unemployment compensation benefits, the options given to the claimant by the employer, all involving changes, were not of that type.

Although the parties differ over the characterization of claimant's termination and the proper resolution of the case,

they agree that the characterization does not affect the outcome. We also agree with this conclusion; therefore, for purposes of analysis, we use the Board's characterization that claimant left her employment voluntarily.

Many of the issues raised by claimant involve events that occurred after claimant unsuccessfully attempted to accept the full-time position that was originally offered. We do not find these events to be relevant to our disposition, and we do not reach the issues related to them.

 A voluntary termination is grounds for disqualification from unemployment compensation benefits only if it is "without good cause attributable to" the employer. 21 V.S.A. § 1344(a)(2)(A). In determining good cause, we must examine each case according to a standard of reasonableness. See *Isabelle v. Department of Employment & Training*, 150 Vt. 458, 460, 554 A.2d 660, 661 (1988). The claimant bears the burden of proving good cause. See *id.* On review of the Board's determination, we will not disturb factual findings supported by credible evidence. See *Allen v. Department of Employment & Training*, 159 Vt. 286, 289, 618 A.2d 1317, 1319 (1992).

The critical fact in this case is that the employer precipitated the situation by requiring claimant, who had worked part time for over a year and since the beginning of her employment, to work full time (or two twelve-hour weekend days) in order to retain a job. That circumstance is clearly attributable to the employer; the question is whether it creates good cause to quit. The Board concluded that this change in hours to be worked was not of the "type" to constitute good cause for claimant to leave. We find this conclusion to be in error.

There is nothing in our case law to support a categorical approach that certain types of causes can never justify a voluntary termination. More important, although we have not ruled directly on the question, the law from other jurisdictions shows that the kind of work schedule change that occurred here is normally sufficient to justify the claimant to quit. See *Murray v. Rutledge*, 327 S.E.2d 403, 405–06 (W. Va. 1985) (change in terms of employment may justify voluntary termination). This principle has been applied routinely in cases where the employer changes to full time the work hours of a part-time

worker.[1] See *Banks v. Elledge*, 535 So. 2d 808, 811–12 (La. Ct. App. 1988); *Newland v. Job Serv. North Dakota*, 460 N.W.2d 118, 123 (N.D. 1990) ("[a] shift change which results in an increase in total hours . . . constitutes good cause for leaving"); *Livezey v. Commonwealth Unemployment Compensation Bd.*, 453 A.2d 739, 741 (Pa. Commw. Ct. 1982) ("change in hours from part-time to full-time was a material alteration of the contract of hire, and . . . such action constitutes necessitous and compelling reason to leave").

Permanent part-time workers have become common in our economy as two-worker families attempt to obtain an adequate income while rearing children and having adequate leisure time. See generally Rosettenstein, *Unemployment Benefits and Family Policy in the United States*, 20 Fam. L.Q. 393, 403–10 (1986). We have recognized that unemployed persons who are willing to accept only part-time work are available for work, and therefore may be eligible for unemployment compensation benefits, if they are attached to a real and substantial labor market for the part-time services they offer. See *Stryker v. Department of Employment Sec.*, 134 Vt. 224, 226–27, 356 A.2d 534, 535 (1976). Because the amount of benefits is related to historic earnings, part-time workers draw fewer unemployment compensation benefits because of their part-time status. See 21 V.S.A. § 1338. There is no public policy reason to refuse to protect their part-time status and allow them income security in the form of unemployment compensation benefits when employers unilaterally attempt to change that status to full time. In *Healey v. Department of Employment Security*, 140 Vt. 79, 81, 436 A.2d 753, 755 (1981), we held that a part-time worker who demanded a full-time job and quit when she did not receive it was properly denied compensation. In the reverse situation, the employer who demands full-time work as a condition of continued employment should pay unemployment compensation as the business price of altering the employee's expecta-

---

[1] The dissent appears to suggest that the weekend work offered by the employer should be considered part time, and therefore this rule does not apply. The employer considered the weekend work schedule to be the equivalent of a full time position and paid accordingly. We cannot accept the dissent's characterization of the employer's offer.

tions. We endorse the decisions of other states holding that an employer's unilateral decision to increase a part-time worker's hours to full time is normally good cause for the employee to leave. This rule is in accord with the liberal, remedial construction we must give the unemployment compensation statutes. See *Allen*, 159 Vt. at 291, 618 A.2d at 1320.[2]

▪ Application of this general rule is not changed because claimant tried to accept the original offer of full-time employment. The employer withdrew the offer and substituted one substantially less favorable to claimant. Claimant bore some burden to try to resolve the scheduling problems. See *Rushlow v. Department of Employment & Training*, 144 Vt. 328, 331, 476 A.2d 139, 141 (1984). She should not be penalized for her attempt to do so. See *Seymour v. Department of Employment Sec.*, 137 Vt. 79, 80, 399 A.2d 519, 520 (1979). The focus here must be primarily on the conduct of the employer. See *Burke v. Department of Employment Sec.*, 141 Vt. 582, 587, 450 A.2d 1156, 1158 (1982). In this case, claimant quit because her part-time job was unilaterally converted by the employer into a full-time job.

*Reversed.*

**Morse, J.,** dissenting. Because the Board's factual determinations were supported by the evidence and were not clearly erroneous, they survive the standard of review and should not be overcome by our view of the facts. I therefore respectfully dissent.

The fundamental issue was whether claimant had "good cause" within the meaning of § 1344(a)(2)(C) to refuse all of the three positions offered her after her three-day-a-week job totalling twenty-four hours was eliminated. The existence of good

---

[2] The Board decision suggests it was influenced in part by its finding that claimant was told at the time of her hiring that her work schedule could be changed. The evidence supporting this finding is a written "Employer-Employee Agreement," signed by claimant and specifying that she would work 24 hours per week, but that the "schedule may be changed." We do not read the agreement as her acceptance that the employer could at any time increase her hours to full time. In any event, we do not believe the agreement defeats claimant's employment expectations after she has worked 24 hours per week for more than a year.

cause is determined according to a standard of reasonableness, what a reasonable person would do in the same situation. *Shufelt v. Department of Employment & Training*, 148 Vt. 163, 165, 531 A.2d 894, 896 (1987).

The Court states that the cause for claimant leaving her job was a unilateral conversion of "her part-time job . . . into a full time job." The facts show otherwise. Claimant had agreed to a change in work schedule, and the schedule was changed from twenty-four hours during the week to twenty-four hours during the weekend for which claimant would be paid extra. Not only did claimant refuse to take that job, she turned down the offer of a full-time weekday job as well. Later she indicated she would take the weekday job, but that had been filled. The employer then offered her a suitable temporary position with the promise that she would receive permanent work when that became available. Claimant rejected that proposal. It is no wonder the Board concluded claimant was reacting unreasonably to the reasonable efforts of her employer to meet her employment needs. The employer, which "bent over backwards" to accommodate claimant, should not be penalized.

I would affirm.