VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.      23-AP-089



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SEPTEMBER TERM,   2023

Jennifer Parmelee\* v. Department of Labor     }     APPEALED FROM:
(Bridge School, lnc.)                          }
                                               }     Employment Security Board
                                               }     CASE NO. 12-21-091-01

In the above-entitled cause, the Clerk will enter:

Claimant appeals pro se from a decision by the Employment Security Board finding her ineligible for the unemployment compensation benefits she received and liable for an overpayment.  We uphold the Board's decision with respect to the period following July 27, 2021; we reverse its decision with respect to the period between late May 2021 and July 27, 2021.  This case is therefore remanded to the Board for additional proceedings consistent with this opinion.

The record indicates the following.  Claimant applied for and received unemployment compensation beginning in late May 2021.  In her application for benefits, claimant indicated that she worked part-time for The Bridge School and that, for health and childcare reasons, she was unable to accept the hours offered to her or work full-time.  Claimant indicated that employer had reduced her hours.  Claimant obtained a letter from her doctor stating that, effective May 27, 2021, she was unable to work full-time due to childcare needs.  The letter also noted that claimant had recently experienced medical issues that required testing and visits with specialists.  Claimant stated that she could not work full-time due to her medical issues and childcare needs.  She continued working part-time for employer until July 27, 2021.

A claims adjudicator determined that claimant was disqualified from receiving benefits from late May 2021 through September 4, 2021, because claimant left her employment due to a certified health condition and failed to disclose that she was unavailable for full-time or any work.  The claims adjudicator found claimant liable for $7,617 in overpaid benefits received during the disqualification period.

Claimant appealed to an administrative law judge (ALJ), indicating that the claims adjudicator erred in describing the underlying events. At the hearing, claimant acknowledged that she had been employed part-time by employer and was never asked to work full-time. She was employed at the time she filed her claim for benefits in May 2021. Claimant asserted that she was fired on July 27, 2021; employer testified that claimant voluntarily quit. The ALJ credited employer's position.

The ALJ modified the decision by the claims adjudicator, making the following findings. Claimant was employed by The Bridge School as an assistant teacher beginning in August 2020. She was hired to work part-time from 8 a.m. until 3 p.m. several days per week. Claimant's last day of work for pay was July 27, 2021.

After claimant was hired in August 2020, she asked to arrive ten minutes late and leave ten minutes early during her shifts to transport her child to school. This schedule alteration was problematic for employer. On July 27, 2021, claimant and the school director had a meeting. Claimant was scheduled to go on vacation and return to work before the existing school year ended. Claimant was not hired as an assistant teacher for the 2021-2022 school year. At their meeting, the parties discussed various items related to claimant's job and the schedule alteration. The director told claimant that, going forward, it could not accommodate her schedule-alteration request. Claimant responded, "Thank you for the experience," and indicated that this change would not work for her. Claimant expressed her belief that she had been fired; the director disagreed. The director expected claimant to return to work as planned after her vacation. Claimant did not return to work, however, although continuing work was available. Claimant submitted a May 2021 letter from her medical provider, which stated that claimant could not work full-time as she "needs to care for her daughter." Claimant held primarily part-time jobs in the past.

Based on these findings, the ALJ concluded that claimant was disqualified for benefits after July 27, 2021, because she voluntarily left her last employing unit without good cause attributable to her employer. Claimant did not assert that a health condition caused her separation from employment and the ALJ found no support for such an argument. The ALJ found that claimant quit her job on July 27, 2021, when she thanked the director for the experience. Employer did not tell claimant that she would be immediately discharged from her job, nor did employer's actions indicate that claimant's employment would cease prior to the end of the school year. The ALJ found that claimant had the option of continuing to work until the end of the current school year and adhering to employer's decision concerning her schedule. Claimant chose not to do so, however, and her dissatisfaction with employer's workplace rules did not constitute good cause for leaving. The ALJ also concluded that claimant failed to show that she was genuinely attached to the labor market, that is, able and available to work, beginning at the date of her request for unemployment compensation. The ALJ thus held that claimant had been overpaid between May 29, 2021, through September 4, 2021, and was liable for the overpayment.

After hearing argument from the parties, the Board adopted the ALJ's findings and conclusions as its own, finding them supported by the record. It reiterated that claimant resigned from her position when asked to work her scheduled hours and that there was continuing work available to her. This appeal followed.

Claimant argues that the ALJ decided the case on different legal grounds than those relied upon by the claims adjudicator and she was thereby deprived of adequate notice and the ability to prepare for the hearing. She challenges the ALJ's finding that she was not attached to the labor market because she worked part-time. Claimant reiterates her assertion that she was fired by employer. Alternatively, she suggests that she had just cause to resign if her proposed schedule was not accommodated.

Our review of the Board's decision is "highly deferential." 863 To Go, Inc. v. Dep't of Labor, 2014 VT 61, ¶ 8, 196 Vt. 551. We "will uphold the Board's factual findings unless clearly erroneous and its conclusions of law if fairly and reasonably supported by those findings." Bouchard v. Dep't of Emp. & Training, 174 Vt. 588, 589 (2002) (mem.) (citation omitted). "Absent a clear showing to the contrary, any decisions within the Board's expertise are presumed to be correct, valid, and reasonable." Id.

We reject the argument that claimant lacked notice about what would be decided by the ALJ on appeal. The claims adjudicator deemed claimant disqualified for benefits as of the date of her application, finding that she failed to disclose that she was not available for work. Claimant argued that this was incorrect, and the onus was on her to present evidence to support her eligibility beginning in May 2021 through September 4, 2021.

Claimant was provided a hearing notice that identified the "Issue(s) to be Considered," including: "Health Separation; Voluntary Separation; Ability to Work; Availability for Work; Overpayment of Benefits." The question for the ALJ was whether claimant was entitled to the unemployment compensation benefits that she received or whether she was liable for an overpayment. Claimant's ability and availability to work was integral to her eligibility for unemployment benefits. See 21 V.S.A. § 1343(3) (providing that, to be eligible for benefits, claimant must be "able to work, and . . . available to work"). The ALJ is charged with conducting the hearing "informally and in such manner as to ascertain the substantial rights of the parties" and "[a]ll issues relevant to the appeal shall be considered and passed upon." Rules of the Vermont Employment Security Board § 100:14(I)(1), 13-1 Code of Vt. Rules 24 005 001. At the hearing, the parties could "present such evidence as may be pertinent." Id.

The pertinent question here was whether claimant was eligible to receive unemployment compensation benefits from late May 2021 through September 4, 2021. The rationale to support claimant's eligibility while employed was plainly at issue as were the circumstances of her departure from her employment. Claimant was provided notice and an opportunity to be heard and we reject her assertion that her due process rights were violated. See, e.g., Brock v. Roadway Express, Inc., 481 U.S. 252, 261 (1987) ("[T]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." (quotation omitted)).

The ALJ made findings on the key issues for the period following claimant's departure from her employment, which were adopted by the Board. The conclusion that claimant left her employment voluntarily in July 2021 without good cause attributable to her employer is supported by the record. See 21 V.S.A. § 1344(a)(2)(A) (providing that claimant is disqualified from receiving benefits if claimant "left the employ of the individual's last employing unit voluntarily without good cause attributable to the employing unit"). The ALJ credited

3

employer's testimony about the circumstances of claimant's departure. While claimant argues that she was fired, her arguments challenge the weight of the evidence and the credibility of witnesses, matters reserved exclusively for the trier of fact. See Favreau v. Dep't of Emp. & Training, 156 Vt. 572, 577 (1991) ("Our function on appeal is not to weigh the evidence anew as a trier of fact but to determine if the Board's findings and conclusions are supported by credible evidence."); see also Kasnowski v. Dep't of Emp. Sec., 137 Vt. 380, 381 (1979) ("Weight, credibility and persuasive effect are for the trier of fact.").

Claimant argues that she acted reasonably in quitting. Claimant had the burden of showing "a sufficient reason to justify the quit," and that the reason was "attributable to the employing unit." Bombard v. Dep't of Labor, 2010 VT 100, ¶ 6, 189 Vt. 528 (quotation omitted). "In determining what constitutes 'good cause,' we must review each case according to a standard of reasonableness—i.e., what a reasonable person would have done in the same circumstances." Isabelle v. Dep't of Emp't & Training, 150 Vt. 458, 460 (1988). The record shows that claimant was hired to work specific hours and her request to arrive late and leave early was interfering with employer's operations. Rather than trying to meet employer's expectations and arrange alternative childcare options during the two ten-minute windows, claimant resigned. The Board acted within its discretion in finding claimant's decision to quit unreasonable here.

Claimant cites Shufelt v. Department of Employment & Training, 148 Vt. 163, 169 (1987), where we considered whether a claimant, who had previously worked a day shift, had good cause to turn down an overnight shift. The claimant was a single parent to three children and feared for her children's safety if she left them home alone overnight. We emphasized that, "[i]n determining whether good cause exists for a refusal to accept suitable work when offered, this Court must decide each case on its own facts," and that "[t]he criterion to be followed in making such decision is one of reasonableness, that is, what a reasonable person would be expected to do in the same circumstances." Id. at 165. We held there that "the demands of parental responsibility may constitute good cause for limiting employment to certain hours of the day upon a clear showing that such limitation is necessary and reasonable." Id. at 169. Because the referee below had rejected this as a possible basis for a good-cause refusal, we remanded the case for additional factfinding.

Our recognition that parental responsibilities may "constitute good cause for limiting employment" does not mean that it constitutes good cause in every case. As previously discussed, claimant here was asked to work the hours for which she was hired instead of being allowed a ten-minute window at either end of her shift. The Board could reasonably consider this type of change insufficient to support a decision to quit. Cf. Skudlarek v. Dep't of Emp. & Training, 160 Vt. 277, 280 (1993) (concluding that employer's decision to require "claimant, who had worked part time for over a year and since the beginning of her employment, to work full time (or two twelve-hour weekend days) in order to retain a job" was "clearly attributable to the employer" and constituted "good cause to quit"). As the Board observed, moreover, it was a matter of speculation as to whether claimant would be fired if she arrived late when she returned from vacation. See Kasnowski, 137 Vt. at 382 (holding that "[a] quit for something that is only a possibility and has not yet actually occurred does not justify an award for benefits"). We find no

4

basis to disturb the Board's conclusion as to claimant's post-July 27, 2021, eligibility for unemployment compensation benefits.

We cannot discern the basis of the Board's decision for the dates between late May 2021 and late July 2021, however. The record is unclear as to why claimant was initially awarded benefits for this period, and it is equally unclear why the ALJ decided that claimant was not qualified for these benefits. There does not appear to be any evidence in the record relevant to this period or any clear findings. The Board's conclusion therefore cannot stand. See Bouchard, 174 Vt. at 589. We thus reverse the Board's conclusion on this point and remand for additional proceedings regarding claimant's eligibility for benefits between late May 2021 and late July 2021.

<u>Reversed and remanded for additional proceedings consistent with this opinion</u>.

BY THE COURT:

Paul L. Reiber, Chief Justice

Harold E. Eaton, Jr., Associate Justice

Karen R. Carroll, Associate Justice